**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OFMARTIN LUTHER KING JR.
JOSE L. LINARESFEDERAL BUILDING & U.S. COURTHOUSE
JUDGE50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**

March 14, 2008

John A. Craner, Esq.James Katz, Esq.
Craner, Satkin & Scheer, PCSpear, Wilderman, Borish, Endy, Spear
320 Park Avenue& Runckel, PC
P.O. Box 3671040 North Kings Highway, Suite 202
Scotch Plains, NJ 07076Cherry Hill, NJ 08034

Danielle M. White, Esq.
Paul, Hastings, Janofsky & Walker, LLP
75 East 55th Street
New York, NY 10022

Re:**Russo v. American Airlines, Inc., et al.**
**Civil Action No.: 07-3173 (JLL)**

Dear Counsel:

This matter comes before the Court by way of Defendant American Airlines, Inc. and Defendant Allied Pilots Association's respective motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. The Court has considered the parties' submissions, and decides the instant motions without oral argument. Fed. R. Civ. P. 78. For the reasons that follow, this Court grants Defendants' motions.

**I.Factual History**

The relevant facts are not in dispute.[1] Plaintiff, Kevin Russo, was employed by American Airlines ("American"), as a senior pilot. In this capacity, Plaintiff was a member of the Allied Pilots Association ("APA") – a labor organization.

Plaintiff was discharged on March 24, 2004 based on allegations that he defrauded American Airlines by remaining on "active status" at full pay while also receiving pay and maintaining "active duty"status with the United States Air Force, Reserve Unit. Such conduct violated the parties' collective

---

[1] See Pl. Br. at 1. To the extent that any facts are in dispute, they are noted accordingly and are viewed in the light most favorable to Plaintiff, the non-movant. See, e.g., Mellott v. Heemer, 161 F.3d 117, 120 n.2 (3d Cir. 1998).

1

bargaining agreement ("CBA"). Plaintiff subsequently commenced a grievance procedure – in accordance with the terms of the CBA – and was represented by APA counsel Tricia Kennedy throughout same. American denied his grievance, and commenced arbitration proceedings. Again, Plaintiff was represented by APA throughout the arbitration proceedings.

During arbitration, the panel considered whether there were any mitigating circumstances that would warrant Plaintiff's reinstatement. In opposition to evidence presented by APA on behalf of Plaintiff, American introduced testimony from a company witness – Captain Mauro – and documentary evidence – known as a CR-1 entry – of a performance counseling record for purposes of establishing that Plaintiff had previously been cited for and counseled regarding a similar incident back in September 1994. Ms. Kennedy initially objected to the admissibility of such evidence on the basis that there was "no evidence and proof that he was part of this counseling session, and it's dated 1994, and he didn't sign it." (Kennedy Cert., Ex. B at 404-408). The arbitrator excluded the document but permitted Captain Mauro's testimony regarding the September 1994 incident. However, after hearing Captain Mauro's testimony regarding the CR-1 entry, Ms. Kennedy withdrew her objection with respect to the admissibility of the CR-1 entry, noting that Mr. Mauro's description of the CR-1 entry was inaccurate. (Id. at 408). The CR-1 entry was subsequently admitted into evidence. On August 8, 2005, the panel issued its decision sustaining Plaintiff's discharge.

In November 2005, Plaintiff sent Ms. Kennedy a letter indicating that he believed the arbitrator for APA and American may have been involved in some type of collusion or fraud. The following month, Plaintiff again reached out to Ms. Kennedy, via email, indicating that he wished to challenge the arbitration award on the basis that the CR-1 entry was "phony." Ms. Kennedy responded to Plaintiff in December 2005, wherein she explained the various legal bases for challenging an arbitration decision under the Railway Labor Act, and indicated that any "[c]hallenges to the arbitration award should be pursued in federal court." (Kennedy Cert., Ex. H). Ms. Kennedy further advised Plaintiff that (a) APA did not intend to assert a legal challenge to the August 8 arbitration decision, and (b) Plaintiff should retain his own counsel should he wish to challenge said decision. Shortly thereafter, Mr. Keith Biebelberg – an attorney representing Plaintiff in his divorce proceedings – sent a letter to Ms. Kennedy urging her to pursue this matter further by filing a motion to reopen the arbitration proceedings and/or a motion for reconsideration. By way of letter dated January 12, 2006, Ms. Kennedy responded to Mr. Biebelberg's letter, clarifying that she served as counsel to APA – not Plaintiff – during the grievance and/or arbitration proceedings, and explaining that although Plaintiff "is welcome to pursue whatever grounds he finds appropriate," "APA will not fund the venture at this time." (Kennedy Cert., Ex. J). Plaintiff continued to correspond with Ms. Kennedy through November 2006, at which time Ms. Kennedy reminded Plaintiff that "we do not have an attorney client relationship and we will not have one. APA is and has been my client." (Kennedy Cert., Ex. K).

Plaintiff commenced the instant cause of action in July 2007, challenging the August 2005 arbitration award on the basis that the CR-1 entry – admitted into evidence during the arbitration proceedings – was a "product of fraud" fabricated by American, and that APA should have investigated such fraudulent evidence during the arbitration proceedings. Plaintiff's Complaint asserts claims for: (a) breach of duty of fair representation as against Defendant APA, and (b) breach of contract as against

2

American.² In lieu of filing an Answer, Defendant American filed a motion to dismiss Plaintiff's Complaint, or, in the alternative, for summary judgment, and Defendant APA filed a motion for summary judgment. Because the Court considers the documents submitted on behalf of all parties, the Court hereby converts the motion to dismiss filed by Defendant American into a motion for summary judgment pursuant to Rule 56.³

## II.     Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). With this framework in mind, the Court turns now to Defendants' arguments.

---

² This Court's jurisdiction is premised on 28 U.S.C. § 1331 and 45 U.S.C. § 151, et seq.

³ Plaintiff was put on adequate notice that the Court might convert American's motion to dismiss into a motion for summary judgment. First, although American styled their motion as a motion to dismiss, APA's motion, which dealt with essentially the same issues, was styled as a motion for summary judgment under Rule 56. Further, Plaintiff clearly interpreted all filed motions as motions for summary judgment. For instance, he phrased his opposition brief as a "Brief on Behalf of Plaintiff in Opposition to Defendants' Motions for Summary Judgment," and referred to the pending motions as motions for summary judgment in his brief. See Pl. Br. at 18. Finally, Plaintiff attached a Certification and exhibits to his opposition brief for the Court's consideration. Thus, Plaintiff was not only on adequate notice that the Court might convert the above-referenced motions into summary judgment motions, but he in fact treated those motions as such. See Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996) (holding that plaintiff had adequate notice of conversion of motion to dismiss into motion for summary judgment where two of five motions to dismiss were framed in the alternative as motions for summary judgment and plaintiff submitted his own affidavits to the court); see also McDaniels v. New Jersey, 144 Fed. Appx. 213, 2005 WL 730565, at *2 (3d Cir. Mar. 31, 2005) (holding that plaintiff had adequate notice of conversion where motion to dismiss was framed in the alternative as motion for summary judgment and plaintiff responded to motion by mentioning summary judgment in body of his memorandum).

**III.   Discussion**

Labor relations in the airline industry are governed by the Railway Labor Act, 45 U.S.C. § 145, et seq.  In this regard, Plaintiff's Complaint alleges that: (1) APA breached their duty of fair representation pursuant to the Railway Labor Act by failing to investigate the CR-1 entry at the time of arbitration, and (2) American breached the parties' CBA by improperly discharging Plaintiff. (Compl., ¶¶ 16-17).  Such claims have collectively been referred to as "hybrid" claims.[4]

Defendants move for summary judgment on the basis that Plaintiff's hyrbid claims are barred by the applicable six-month statute of limitations. (American Br. at 6; APA Br. at 17).  In response, Plaintiff concedes that: (a) the relevant arbitration decision was rendered on August 8, 2005, (b) he received notice of the arbitration award "within a week or so of August 8, 2005,"[5] and (c) a six-month statute of limitations applies to such hybrid suits brought under the Railway Labor Act.[6]  (Russo Cert., ¶ 7; Pl. Opp'n Br. at 3).  Plaintiff does not specifically dispute that his cause of action accrued in August 2005.[7]  Moreover, Plaintiff admits that he (a) questioned the validity of the CR-1 entry at the arbitration proceedings,[8] and (b) felt that

---

[4] In DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164 (1983), the United States Supreme Court referred to a plaintiff's simultaneous assertion of (1) breach of collective bargaining agreement as against his employer, and (2) breach of duty of fair representation as against his union, under the National Labor Relations Act, as "hybrid" claims.  In doing so, the Court explained that such claims are "inextricably interdependent" given that the employee-plaintiff "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."  The Court similarly referred to such claims under the Railway Labor Act as a "hybrid" suit in West v. Conrail, 481 U.S. 35 (1987).

[5] See Russo Cert., ¶ 12.

[6] See, e.g., West, 481 U.S. at 36 (assessing similar "hybrid suit" brought by plaintiff against his employer, his union, and union representative under the Railway Labor Act, and noting the applicable six-month statute of limitations); Sisco v. Consol. Rail Corp., 732 F.2d 1188, 1193-94 (3d Cir. 1984).

[7] The Court notes Plaintiff's obvious attempt to skirt around the issue of the accrual date.  Defendants argue that Plaintiff's cause of action accrued in August 2005, noting that Plaintiff was aware of all the issues underlying the instant cause of action since the arbitration proceeding.  As indicated above, Plaintiff does not dispute Defendant's argument in this regard.  Instead, Plaintiff maneuvers around the issue by focusing its analysis solely on the issue of equitable tolling, which only comes into play once the Court engages in a statute of limitations analysis.  Curiously, however, Plaintiff's opposition brief does not propose a particular date to which it believes the statute of limitations should be tolled.   Despite Plaintiff's obvious maneuvering in this regard, this Court has considered all facts in the light most favorable to Plaintiff, the non-movant, in addressing such issues. See infra notes 12, 15 and 18.

[8] See Russo Cert., ¶¶ 8, 11-12; Compl., ¶ 16.

4

Ms. Kennedy should have taken "time out" to investigate the CR-1 entry at the time of the hearing.[9] Therefore, the Court finds that Plaintiff's cause of action accrued once Plaintiff received notice of the adverse arbitration award – at some point in August 2005.[10]  See, e.g., Bensel v. Allied Pilots Assoc., 387 F.3d 298, 307 (3d Cir. 2004) ("Where a union represents the employee in an arbitration proceeding and proffers rays of hope concerning the possibility of success in spite of its breach . . . the employee's cause of action does not accrue until the arbitration board denies the employee's claim.").[11]  Given that Plaintiff's Complaint was filed in July 2007 – well over six months from August 2005 – the sole issue before this Court is whether the applicable statute of limitations should be tolled in this instance.  Plaintiff argues that it should be tolled based upon equitable tolling principles.  Without such tolling, Plaintiff's claims are clearly time-barred.[12]

### Equitable Tolling[13]

"The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the

---

[9] See Russo Cert., ¶ 11; Compl., ¶ 16.

[10] See Russo Cert., ¶ 12.  Because the Court finds, based on the reasons stated herein, that Plaintiff's cause of action is clearly time-barred, the Court need not determine the specific day on which Plaintiff's cause of action accrued.

[11] See also Miklavic v. USAir Inc., 21 F.3d 551, 556 (3d Cir. 1994) (noting that the limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."); Vadino v. A. Valey Engineers, 903 F.2d 253, 261 (3d Cir. 1990) ("In the somewhat different situation of a hybrid suit where the plaintiff's grievance has proceeded to a final decision by the arbitration board, we have held that the claim accrues at the time the plaintiff knows, or should have known, of the final arbitration decision, rather than when s/he should have reasonably known that further appeals to the union would be futile."); Childs v. Pennsylvania Federation Broth. of Maintenance Way Employees, 831 F.2d 429, 436 (3d Cir. 1987) ("We therefore hold that because the union continued to represent Childs, the cause of action did not accrue until the Board rejected Childs' claim.").

[12] Even assuming, arguendo, that Plaintiff's cause of action did not accrue until December 2006 – the date Plaintiff admits reviewing Ms. Kennedy's final correspondence – Plaintiff's cause of action would nevertheless be time-barred absent equitable tolling.  See infra note 18 and accompanying text.

[13] It is not entirely clear whether equitable tolling is permitted under the Railway Labor Act.  See, e.g., Colletti v. N.J. Transit Corp., 50 Fed.Appx. 513, 518 (3d Cir. 2002) ("We need not decide whether the Seventh Circuit is correct in concluding that equitable tolling is not allowed under the RLA, for our jurisprudence is clear that even if tolling is allowed, it ought to be applied with 'caution.').  The parties have not briefed this issue.  Because the Court finds that Plaintiff's lack of due diligence in any event precludes application of equitable tolling in this case, the Court need not dwell on this issue.

plaintiff's claims." Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006). Equitable tolling is, therefore, an extraordinary remedy which should be applied only sparingly. Podobnik v. United States Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005). The Third Circuit has set forth three principal situations in which equitable tolling is appropriate:

> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision;
>
> (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or
>
> (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

Podobnik, 409 F.3d at 591.[14] Moreover, Plaintiff has the burden of establishing the equitable tolling exception. See Courtney v. La Salle Univ., 124 F.3d 499, 505 (3d Cir. 1997).

Here, Plaintiff does not allege that Defendants "prevented" him in any way from asserting his rights,[15] or that he did assert his rights in a timely fashion, albeit in the wrong forum. Accordingly, the Court need only consider the first situation enumerated above – namely, whether Defendants actively misled Plaintiff regarding his cause of action, and whether such deception caused Plaintiff's non-compliance with the applicable six-month statute of limitations. In support of his request for equitable tolling, Plaintiff's counsel argues the following:

> The point we make is that, depending upon the circumstances, sometimes six (6) months is simply an inadequate amount of time within which an employee must act, since the employee must first gather the evidence necessary to establish his cause of action, especially where that evidence is

---

[14] Because federal statute of limitations controls such hybrid claims, the Court applies federal law tolling principles to determine whether tolling is appropriate in this instance. See, e.g., DelCostello, 462 U.S. at 169; West, 481 U.S. 39, n. 4. To the extent that Plaintiff, instead, urges the Court to apply New Jersey law, Plaintiff cites to no legal authority directing the Court to apply state law tolling principles to such hybrid claims brought under the Railway Labor Act.

[15] Instead, Plaintiff admits that his "marital situation" and his "need to find a job" are, in fact, what "prevented" him from bringing a timely suit. (Russo Cert., ¶ 13) (emphasis added). To the extent that the Court should construe such factors as falling within the scope of the second situation enumerated by the Court in Podobnik, Plaintiff has not demonstrated to the Court's satisfaction that such factors qualify as "extraordinary." Podobnik, 409 F.3d at 591 (finding equitable tolling appropriate "where the plaintiff in some extraordinary way has been prevented from asserting his rights").

> old and the product of fraud, and then must engage specialized counsel who knows what he is doing [most attorneys who practice in the employment law field represent either a corporate entity or a labor organization] and be able to finance that litigation, a large hurdle especially where the employee is unemployed as a result of the employer's discharge. Given the proposition that wrongdoer should not profit from his fraud . . . these hurdles, difficult to begin with [and which we believe are for a jury to decide . . . should be taken into account in determining when the period of limitation commences to run.

(Pl. Opp'n Br. at 6). Notably, however, Plaintiff admits that he suspected the CR-1 entry was fabricated at the time it was introduced into evidence at arbitration – March 22, 2005. See Russo Cert., ¶¶ 8, 11-12; Compl., ¶ 16. Plaintiff further admits that he felt that Ms. Kennedy should have taken "time out" to investigate the CR-1 entry before allowing it to be admitted at the time of the hearing. See Russ Cert., ¶ 11; Compl., ¶ 16. Thus, although Plaintiff admits being aware of both factors at the time of the hearing, Plaintiff argues that "[t]he problem with my suspicion and belief that I never had such a disciplinary counseling was that at the time of the hearing and following the issuance of the award . . . I could not prove [with documentary evidence] that the September 14, 1994 performance counseling never occurred and that the document, CR-1, was false." (Russo Cert., ¶ 12). However, Plaintiff admits that the "proof" he had been looking for after the hearing – referred to in his Complaint as "recently discovered evidence" – had actually been in his possession the entire time. See Compl., ¶ 15; Russo Cert., ¶ 15 (noting that "[i]t was not until mid-November, 2006 [when the divorce issues appeared resolved] that I was finally able to turn my attention back to the arbitration and to start looking through my papers . . ."). Plaintiff simply had not taken the time to look. Thus, even if principles of equitable tolling could somehow toll the statute of limitations to the date on which Plaintiff allegedly discovered "proof" that the CR-1 was fabricated – a finding which this Court does not make – Plaintiff acknowledges that the reason for his delay in securing such documentary evidence was pure lack of diligence on his part.[16]

The Third Circuit has made clear that "running throughout the equitable estoppel cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim." Podobnik, 409 F.3d at 592; see also Baldwin County Welcome Center v. Brown, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by

---

[16] For instance, Plaintiff explains the following:

> The major problem I faced in order to get this evidence is that I did not have the time following my receipt of the arbitration award to look into securing the necessary proofs to establish truth because of my marital situation and because I was actively looking for a flying job. My marital situation and my need to find a job prevented me from doing anything at that time.

(Russo Cert., ¶ 13).

7

courts out of a vague sympathy for particular litigants."). Plaintiff's submissions are replete with admissions that his failure to secure the relevant evidence and initiate the instant cause of action had nothing to do with any actions by the Defendants. See Russ Cert., ¶ 13 (noting that "between August, 2005 when the arbitration award issued, and the end of the year, I was totally preoccupied with my marital situation and in particular the issue of the custody of my daughter and the damage to her, and subsequently the divorce itself [including its financial cost] as well as my efforts to get a job after I had been discharged by AA."); id. at ¶ 15 (noting that "[i]t was not until mid-November, 2006 [when the divorce issues appeared resolved] that I was finally able to turn my attention back to the arbitration and to start looking through my papers . . ."). Rather, Plaintiff's own words confirm that his preoccupation with personal matters prevented him from focusing his attention on his legal matters from August 2005 through November 2006. The Court finds that Plaintiff's own lack of due diligence, therefore, precludes equitable tolling in this case. To hold otherwise, in light of Plaintiff's admissions, would render the statute of limitations effectively meaningless.

Even if the Court were inclined to overlook Plaintiff's lack of due diligence, Plaintiff does not allege – much less demonstrate – any fraudulent or deceptive conduct on the part of the Defendants which inhibited his ability to bring a timely suit. See Podobnik, 409 F.3d at 591; see, e.g., Myers v. AK Steel Corp., 156 Fed. Appx. 528, 531 (3d Cir. 2005) (recognizing that "equitable tolling principles apply . . . when fraudulent conduct inhibits the plaintiff's ability to bring a timely suit."). To the extent that the Court should construe certain statements made in Plaintiff's Certification as insinuating that he was lulled into a false sense of security by engaging in correspondence with Ms. Kennedy after his receipt of the adverse arbitration decision, there is no evidence that (1) Plaintiff relied on Ms. Kennedy's statements for the proposition that his cause of action had not yet accrued, (2) that such reliance actually caused his delay,[17] or (3) that any such reliance would have been reasonable in this instance.[18] See generally Miklavic, 21 F.3d 551, 557 (3d Cir. 1994) (citing Vadino, 903 F.2d 253, 263-64). In the same vein, even assuming, arguendo, that the CR-1 Entry was, in fact, a "phony" as alleged by Plaintiff, any such fabrication – and the union's subsequent failure to investigate same – did not prevent Plaintiff from filing his claim within the statute of limitations. To the contrary, Plaintiff admits that his "marital situation" and his "need to find a job" are, in fact, what "prevented" him from bringing a timely suit. (Russo Cert., ¶ 13) (emphasis added).

---

[17] See Russo Cert., ¶ 15 (noting that "[i]t was not until mid-November, 2006 [when the divorce issues appeared resolved] that I was finally able to turn my attention back to the arbitration and to start looking through my papers . . .").

[18] See, e.g., Kennedy Cert., Ex, H ("I do not see any viable grounds for APA to pursue judicial review of your arbitration award."); Kennedy Cert., Ex. J ("Mr. Russo is welcome to pursue whatever grounds he finds appropriate but APA will not fund the venture at this time."); Kennedy Cert., Ex. K ("I reiterate at this point (once again), we do not have an attorney client relationship and we will not have one. APA is and has been my client."). Even assuming, arguendo, that Ms. Kennedy's willingness to review Plaintiff's alleged "evidence" tolled the six-month statute of limitations by providing a "ray of hope" that APA would again take action on his behalf (Kennedy Cert., Ex. K), Plaintiff concedes that such ray of hope was gone by December 2006. (Russo Cert., ¶ 23). Thus, Plaintiff's cause of action would nevertheless be time-barred given that his Complaint was filed seven months later.

Because Plaintiff's lack of due diligence precludes equitable tolling in this case, Plaintiff's cause of action accrued in August 2005. Plaintiff, therefore, had until February 2006 to file his Complaint. Plaintiff's Complaint was not filed, however, until July 2007. Accordingly, Plaintiff's hybrid claims are barred by the applicable six-month statute of limitations.

**IV.     Conclusion**

For the reasons set forth above, Plaintiff's claims are barred by the applicable statute of limitations. Defendants' motions for summary judgment are, therefore, granted. An appropriate Order accompanies this Letter Opinion.

Sincerely,

/s/ Jose L. Linares

United States District Judge